# IN THE SUPREME COURT OF CALIFORNIA

GLENN MANIAGO et al.,
Plaintiffs and Appellants,

v.

DESERT CARDIOLOGY CONSULTANTS' MEDICAL
GROUP, INC., et al.,
Defendants and Respondents.

S290188

Fourth Appellate District, Division One
D085025

Riverside County Superior Court
CVRI2303683

July 16, 2026

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Evans, and Cody* concurred.

---

\* Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MANIAGO v. DESERT CARDIOLOGY CONSULTANTS'
MEDICAL GROUP, INC.

S290188


Opinion of the Court by Groban, J.


Plaintiffs, a husband and wife, filed a complaint alleging negligence and several related claims arising from the husband's exposure to HIV-positive blood during a surgical procedure. The trial court sustained a demurrer to some of the claims with leave to amend (two claims were not subject to the ruling) and struck certain forms of requested relief, including punitive damages. Five days before the time to amend the pleadings had expired, plaintiffs filed a voluntary dismissal of all their claims with prejudice. (See Code Civ. Proc., § 581, subd. (b)(1).)[1] The request was accompanied by a declaration explaining that the dismissal was intended to expedite an appeal of the trial court's orders. After the clerk entered the voluntary dismissal, plaintiffs filed a notice of appeal. The question in this case is whether plaintiffs' voluntary dismissal constitutes an appealable judgment.

Although we have previously described the entry of a voluntary dismissal as " 'a ministerial . . . act . . . [from which] no appeal lies' " (*S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 380 (*S.B. Beach*)), plaintiffs rely on authorities that have recognized an exception to this rule when the dismissal "was entered after an adverse ruling by the trial court in order to

_____

[1] Unless otherwise noted, all further statutory citations are to the Code of Civil Procedure.

1

expedite an appeal of the ruling" (*Stewart v. Colonial Western
Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1012 (*Stewart*)). Those
cases typically involve situations where a trial court's orders
either foreclosed or severely limited the plaintiff's action. (See
*Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790,
792–793 (*Ashland*); *Austin v. Valverde* (2012) 211 Cal.App.4th
546, 550–552 (*Austin*).) Other courts have taken a stricter
approach, concluding that voluntarily dismissed claims can
never be appealed. (See *Maniago v. Desert Cardiology
Consultants' Medical Group, Inc.* (2025) 109 Cal.App.5th 621,
630–631 (*Maniago*); *Yancey v. Fink* (1991) 226 Cal.App.3d 1334,
1342–1343 (*Yancey*); *Cook v. Stewart McKee & Co.* (1945)
68 Cal.App.2d 758, 760–761 (*Cook*).)

In this case, the trial court issued two orders prior to the
filing of the voluntary dismissal, neither of which foreclosed any
of the Maniagos' claims. Instead, those orders merely sustained
a demurrer to some (but not all) of their claims with leave to
amend and struck certain forms of requested relief. We hold
that when, as here, the plaintiffs voluntarily dismiss their
action before the court has reached a final resolution regarding
any of the claims pleaded in the complaint, the effect of the
dismissal is to terminate the action entirely, thus forfeiting the
right to appeal.

# I. BACKGROUND

## A. Factual Allegations

Glenn Maniago (Maniago) worked as a surgical technologist in a cardiac catheterization laboratory.[2] On March 15, 2023, Maniago was called in to assist Dr. Praveen Panguluri with a surgery on a patient who was suffering from cardiac arrest. As part of his job duties, Maniago prepared a "splash bin," which is a piece of surgical equipment that is designed to safely hold biohazardous waste. As the surgery proceeded, Panguluri used a syringe to draw blood from the patient. Rather than emptying the syringe into the splash bin, Panguluri discharged the syringe onto a sterile drape, causing blood to splash into Maniago's right eye. It was later discovered that the patient had HIV. As a result of his potential exposure to HIV, Maniago was required to take antiviral drugs that caused various side effects including abdominal pain, nausea and headaches. He also had to test for HIV for a period of six months. During that time, the "uncertainty surrounding his health condition" resulted in high levels of anxiety that interfered with his marriage.

## B. Procedural History

Maniago and his wife Geneanne Maniago (Geneanne)[3] filed a complaint against Panguluri and Panguluri's employer,

---

[2] These factual allegations are taken from the operative first amended complaint. We express no opinion on the veracity of the allegations, which are immaterial to the legal questions presented in this case.

[3] Both husband and wife are collectively referred to as the Maniagos.

Desert Cardiology Consultants' Medical Group, Inc., seeking compensation for injuries arising from Maniago's exposure to HIV-positive blood. The operative first amended complaint alleged four claims on behalf of both plaintiffs: General negligence, assault, battery and unfair business practices under Business and Professions Code section 17200 et seq. The complaint asserted a fifth claim on behalf of Geneanne only for loss of consortium.

Defendants filed a demurrer to the first four causes of action. The demurrer did not challenge Geneanne's stand-alone claim for loss of consortium. In addition to their demurrer, defendants filed a motion to strike several forms of requested relief, including punitive damages, attorney fees and prejudgment interest. After a hearing on these matters, which plaintiffs did not attend, the trial court entered an order overruling the demurrer as to Maniago's negligence claim and sustaining the remainder of the demurrer with 20 days leave to amend. The court also struck plaintiffs' prayers for punitive damages, attorney fees and prejudgment interest.

Five days before the expiration of the amendment period plaintiffs filed a voluntary dismissal of their action with prejudice. An accompanying declaration explained that the dismissal was filed "solely for the purpose of expediting an appeal" of the trial court's "adverse rulings." In support, the declaration cited *Austin*, *supra*, 211 Cal.App.4th 546, and *Flowers v. Prasad* (2015) 238 Cal.App.4th 930 (*Flowers*). The declaration further explained that "[r]eview by appeal from a subsequent judgment [was] inadequate" because the orders had "prevent[ed] a substantial portion of the Maniagos' case from being heard on its merits . . . [and] delay[ed] the resolution of

pivotal theories of liability." Following the clerk's entry of the dismissal plaintiffs filed a notice of appeal. The notice identified the voluntary dismissal as the operative appealable judgment.

Defendants requested that the Court of Appeal dismiss the appeal for lack of jurisdiction, arguing that the clerk's entry of the voluntary dismissal was a ministerial act that did not constitute an appealable order. The appellate court agreed and dismissed the appeal. We granted review.

## II. DISCUSSION

The Maniagos argue that the Court of Appeal erred in concluding that their voluntary dismissal does not qualify as an appealable judgment. Whether an order or judgment is appealable presents " 'a question of law' " (*In re Estate of Kasson* (1901) 135 Cal. 1, 3) that is subject to "the non-deferential, de novo standard [of review]" (*People v. Louis* (1986) 42 Cal.3d 969, 985). Like the Court of Appeal, we conclude that there are multiple reasons why the Maniagos' voluntary dismissal cannot be properly characterized as an appealable judgment.

### A. The Maniagos' Voluntary Dismissal Operated to Terminate the Action

"The right to appeal in California is 'entirely statutory and subject to complete legislative control.' " (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 651 (*Meinhardt*).) "With certain exceptions not pertinent here, appealable judgments and orders are listed in Code of Civil Procedure section 904.1." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.) Although that statute does not list voluntary dismissals as an appealable form of filing, the Maniagos argue that their dismissal qualifies as a "judgment"

within the meaning of section 904.1, subdivision (a)(1) because
it resolved all of their claims in the trial court.  (See § 904.1,
subd. (a)(1) [permitting an appeal "[f]rom a judgment, except an
interlocutory judgment"]; see *Sullivan v. Delta Air Lines, Inc.*
(1997) 15 Cal.4th 288, 304 [a judgment is appealable under §
904.1, subd. (a)(1) " ' "when it terminates the litigation between
the parties on the merits of the case and leaves nothing to be
done but to enforce by execution what has been determined" ' "].)
The Maniagos' arguments reflect a misunderstanding of the
nature of a voluntary dismissal.

Section 581 permits a plaintiff to voluntarily dismiss a
claim prior to the "actual commencement of trial."  (§ 581, subds.
(b), (c).)  As used in section 581, the phrase "commencement of
trial" has been interpreted to include pretrial rulings that
" 'effectively dispose' " of the claim at issue.  (*Gogri v. Jack in the
Box Inc.* (2008) 166 Cal.App.4th 255, 262, italics omitted; *Kyle v.
Carmon* (1999) 71 Cal.App.4th 901, 908–910.)  We have
previously held, for example, that a plaintiff cannot voluntarily
dismiss a claim after a demurrer has been "sustained without
leave to amend, or . . . sustained with leave to amend and the
plaintiff fails to amend within the time allowed by the court."
(*Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009)
174 Cal.App.4th 67, 76 (*Lewis C.*), citing *Wells v. Marina City
Properties, Inc.* (1981) 29 Cal.3d 781, 785, 789 (*Wells*).)  In
contrast, a plaintiff retains the right to voluntarily dismiss a
claim "during the time granted leave to amend following the
sustaining of a demurrer."  (*Parsons v. Umansky* (1994)
28 Cal.App.4th 867, 869 (*Parsons*); see *Wells*, at p. 790
[voluntary dismissal is permissible "until expiration of
plaintiff's time to amend"].)  A voluntary dismissal " 'is

accomplished by filing with the clerk a written request therefor. If in proper form, the dismissal is effective immediately.' " (*S.B. Beach*, *supra*, 39 Cal.4th at p. 380.)

Prior decisions of this court and our Courts of Appeal make clear that a voluntary dismissal, which is filed with and entered by the clerk, constitutes " 'a ministerial, not a judicial, act, and no appeal lies therefrom.' " (*S.B. Beach*, *supra*, 39 Cal.4th at p. 380.) As explained by one court, " 'there is no kinship of a voluntary dismissal to a final judgment. A wilful dismissal terminates the action for all time and affords the appellate court no jurisdiction to review rulings . . . made prior to the dismissal." (*Yancey*, *supra*, 226 Cal.App.3d at p. 1343, quoting *Cook*, *supra*, 68 Cal.App.2d at pp. 760–761; see *S.B. Beach*, at p. 380 [after "plaintiffs dismiss[] their action no lawsuit exist[s]"]; *Holt Mfg. Co. v. Collins* (1908) 154 Cal. 265, 274 [the effect of voluntarily dismissing a defendant "is the same as if [the defendant] had never been made a party"].) " 'Alternatively stated, [a] voluntary dismissal . . . deprives the court of both subject matter and personal jurisdiction [over the dismissed claims], except for the limited purpose of awarding costs and . . . attorney fees.' " (*Lewis C.*, *supra*, 174 Cal.App.4th at p. 76; *Wells*, *supra*, 29 Cal.3d at p. 784; accord, *S.B. Beach*, at p. 380 [voluntary dismissal terminates the action but "does not deprive the trial court of jurisdiction over 'collateral statutory rights,' including 'the right to statutory costs and attorneys fees' "].)

Applying those principles here, the effect of the Maniagos' voluntary dismissal was not to confer jurisdiction on the appellate court, but rather to terminate the action and forfeit any right to appeal. At the time the Maniagos filed their

voluntary dismissal with the clerk, the trial court had issued
two orders, neither of which foreclosed any of their claims.  The
court's first order sustained a demurrer with leave to amend as
to three of Maniago's four claims and four of Geneanne's five
claims.  Because the Maniagos filed their dismissal before the
time to amend had expired, that ruling cannot be said to have
foreclosed any of those claims.[4]  (See *Wells*, *supra*, 29 Cal.3d at
pp. 789–790 [voluntary dismissal is permissible when a
demurrer is sustained with leave to amend and the time to
amend has not yet expired]; *Parsons*, *supra*, 28 Cal.App.4th
867.)  And that order plainly had no effect on (let alone
foreclosed) Maniago's negligence claim or Geneanne's loss of

---

[4]    Plaintiffs appear to argue that an order sustaining a
demurrer *with leave to amend* should be treated as a final
decision regarding the merits of the claims regardless of
whether the time to amend has expired.  In support, plaintiffs
cite well-established case law holding that "[e]ven if given an
opportunity to amend, a plaintiff  may stand on the sufficiency
of the complaint." (*Miles v. Deutsche Bank National Trust Co.*
(2015) 236 Cal.App.4th 394, 401.)  While it is true that a plaintiff
is permitted to stand on the allegations in a complaint rather
than amend it, plaintiffs overlook that an order sustaining a
demurrer with leave to amend nonetheless remains nonfinal
*until the expiration of the amendment period*. (See *Wells*, *supra*,
29 Cal.3d at pp. 789–790; *Parsons*, *supra*, 28 Cal.App.4th 867.)
We are not aware of any authority suggesting that an order
sustaining a demurrer with leave to amend constitutes a final
decision on the merits *prior* to the expiration of the amendment
period.

consortium claim, which were not impacted by the demurrer ruling in any way.[5]

The trial court's second order struck some forms of recovery that the Maniagos had requested in their complaint, including punitive damages and attorney fees. Like the demurrer order, the trial court's decision to preclude certain forms of recovery did not dispose of any claims in the pleadings. Instead, it merely limited the scope of the Maniagos' potential recovery were they to ultimately prevail on any of their claims. (Cf. *Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 ["An order striking a pleading is . . . not appealable" unless it "operates to remove from the case the pleader's only cause of action" or "leaves no further issue to be determined"]; accord, *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 489.)

Because the trial court had not made a " ' "determinative adjudication" ' " (*Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1171) regarding any of the claims pleaded in the complaint, the Maniagos were permitted to voluntarily dismiss the entirety of their action. But for the reasons explained above, contrary to the Maniagos' assertions,

---

[5] Although defendants did not demur to Geneanne's claim for loss of consortium, the Maniagos argue that the trial court's order states that it sustained a demurrer to *all* of her claims, which necessarily includes the loss of consortium claim. While ultimately immaterial to our analysis, we agree with the Court of Appeal that the trial court's order is most reasonably interpreted as "referring to the claims that were actually the subject of the demurrer . . . , which did not include Geneanne's loss of consortium claim." (*Maniago, supra*, 109 Cal.App.4th at p. 626, fn. 1.)

their dismissal was not tantamount to a final judgment or even a judgment of any kind. (See *H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1365 [voluntary dismissal "is not a final judgment, as no judgment, final or otherwise, is necessary to the dismissal"].) Rather, the voluntary dismissal operated to terminate each of the dismissed claims (which in this case amounted to the entire action), thus forfeiting the right to challenge any orders the court issued prior to the entry of dismissal.[6] (See *S.B. Beach*, *supra*, 39 Cal.4th at p. 380 [" 'no appeal lies' " from the entry of a voluntary dismissal].)

## B. Permitting an Appeal Would Violate the One Final Judgment Rule

We also agree with the Court of Appeal that, in addition to violating the rules governing voluntary dismissals, allowing an appeal under the circumstances presented here would violate the principles of the one final judgment rule. Codified in section 904.1, subdivision (a)(1), "the one final judgment rule, precludes

---

[6] Although the Maniagos' primary argument is that their dismissal should be treated as a "judgment" within the meaning of section 904.1, subdivision (a)(1), at times in their briefing they appear to suggest that section 906 provides an independent basis for appellate jurisdiction. Section 906, however, merely lists the types of intermediate orders that an appellate court may review *once an appeal has been taken from an appealable judgment or order*. (See § 906 ["Upon an appeal pursuant to Section 904.1 . . . reviewing court may review . . . any intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from"].) Contrary to the Maniagos' suggestion, nothing in section 906 permits the immediate appeal of a judgment or order that does not otherwise qualify as an appealable judgment or order under section 904.1.

an appeal from a judgment disposing of fewer than all the causes
of action extant between the parties . . . . The theory of the rule
is that ' "piecemeal disposition and multiple appeals in a single
action would be oppressive and costly, and that a review of
intermediate rulings should await the final disposition of the
case." ' " (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1101
(*Kurwa*).)

The core of the Maniagos' argument is that plaintiffs
should be permitted to utilize voluntary dismissals as a means
of obtaining immediate review of any order that has a "direct
and substantial impact on the . . . case." Applying that
reasoning here, they contemplate that if they were to succeed in
overturning the trial court's orders, they should then be
permitted to continue litigating all the claims that they
dismissed, including those that were not affected by the
demurrer order (i.e., Maniago's negligence claim and
Geneanne's loss of consortium claim). Stated differently, the
Maniagos argue that their voluntary dismissal entitles them to
obtain direct review of a demurrer order that addresses some of
their claims while also retaining the right to pursue the claims
that were not adjudicated in that order. (See *Maniago, supra*,
109 Cal.App.5th at p. 633 [while plaintiffs "purport to have
dismissed their entire case with prejudice, they are
simultaneously seeking a complete reversal of the dismissal to
revive all the same claims they purportedly dismissed"].)[7] That

_____

[7] Plaintiffs' counsel confirmed at oral argument that
plaintiffs' position is that if they were permitted to proceed with
(and ultimately prevailed on) their appeal, they would then be
permitted to continue litigating all of the claims pleaded in their
complaint.

approach, however, would invite the exact type of piecemeal appellate review that the final judgment rule is designed to avoid. Any subsequent rulings the trial court might make regarding Maniago's negligence claim or Geneanne's loss of consortium claim — which have not yet been adjudicated — might necessitate additional rounds of appeals that could have been avoided had the Maniagos simply awaited a final judgment in the matter.

In *Kurwa*, *supra*, 57 Cal.4th 1097, we rejected an analogous attempt to manufacture appellate jurisdiction prior to entry of a true final judgment. The parties in *Kurwa* agreed to dismiss with prejudice various claims that had been adjudicated by the trial court and dismiss the remaining unadjudicated claims without prejudice. The parties acknowledged that the purpose of the arrangement was to " 'test the issue[s]' " (*id.* at p. 1101) that the trial court had ruled on, while preserving the plaintiffs' ability to reinitiate their remaining claims depending on the outcome of the appeal. We rejected that approach, reasoning that the parties were attempting to create appellate jurisdiction while " 'keep[ing the dismissed] causes of action undecided and legally alive for future resolution in the trial court.' " (*Id.* at p. 1104, quoting *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 445.)

Like the parties in *Kurwa*, the Maniagos attempt to evade the final judgment rule by seeking an appeal before there has been a judicial resolution of all the claims between the parties. Indeed, the Maniagos were even further from obtaining a final judgment than the parties in *Kurwa* because the trial court had not precluded *any* of their claims prior to the entry of the voluntarily dismissal. (See *ante*, at pp. 7–9.) While the

Maniagos purported to dismiss all their claims in an effort to obtain expedited review of the trial court's interlocutory orders, the Maniagos are in fact seeking to preserve all their claims in the event they are successful in their appeal. Such an approach is prohibited under the one final judgment rule.

### C. Procedural Mechanisms that Would Have Allowed the Maniagos To Obtain Expedited Review

Although the Maniagos' voluntary dismissal did not operate as a final judgment, there were multiple ways they could have sought expedited review of the court's interlocutory orders. First, as the Court of Appeal correctly noted, they could have filed a petition for writ of mandate (§§ 1085, 1086), which is the traditional means of challenging an interlocutory order when "the plaintiff has no adequate remedy at law and will otherwise suffer irreparable injury." (*Maniago*, *supra*, 109 Cal.App.5th at p. 629; accord, *Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299–300.) Writ relief may be appropriate, for example, "when it appears that the trial court has deprived a party of an opportunity to plead his cause of action or defense, and when extraordinary relief may prevent a needless and expensive trial and reversal." (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894.) That is effectively what the Maniagos are claiming occurred here. In the declaration accompanying their voluntary dismissal, the Maniagos assert that "Review by appeal from a subsequent judgment is inadequate because . . . the [trial] [c]ourt's orders: (a) prevent a substantial portion of the Maniagos' case from being heard on its merits; (b) delay the resolution of pivotal theories of liability; and (c) require reversal and retrial of the issues at a second trial,

thereby wasting judicial resources." Such arguments are properly presented through a petition for writ of mandate, not a direct appeal of a voluntary dismissal.[8]

Unlike the right to appeal, a petition for writ of mandate provides appellate courts *discretionary* authority to review an interlocutory order. As a general matter, "[a]ppeal is presumed to be an adequate remedy and writ review is rarely granted." (*Doe 3, Family Services Organization v. Superior Court* (2025) 110 Cal.App.5th 571, 580.) The Maniagos' approach would turn that presumption on its head, effectively permitting parties to obtain interlocutory review of any order that can be said to have a substantial impact on their claims by simply dismissing the action and then, if successful, having all their claims (including those the trial court never ruled on) reinstated.

The second method by which the Maniagos could have obtained expedited review of the trial court's orders would have been to seek a judgment on the claims that were subject to the demurrer order and then abandon the claims that were not subject to that order through a voluntary dismissal. Under this alternate approach, the Maniagos could have waited for the 20-day amendment period to expire (which was set to occur five days after they dismissed their case) and then requested a judicial order of dismissal of the claims that were subject to the demurrer order. (See § 581, subd. (f)(2) [authorizing court to dismiss the complaint "after a demurrer to the complaint is sustained with leave to amend, [and] the plaintiff fails to amend it within the time allowed by the court"].) Under section 581d,

---

[8]     We express no view as to whether the Maniagos would be entitled to writ relief had they pursued that option.

the court's dismissal order would have served as a judgment regarding those claims. The Maniagos could have then voluntarily dismissed the remaining claims that were not subject to the demurrer order — negligence and loss of consortium — which would have removed those claims from the action. At that point, there would have been a final resolution of every claim alleged in the complaint and the Maniagos could have requested a final judgment from which an appeal could have been taken. While this option would have required the Maniagos to abandon their claims for negligence and loss of consortium, it nonetheless presented a viable option to obtain expedited review.

If the Maniagos were disinclined to abandon those claims, they were free to seek writ relief. What the Maniagos could not do was attempt to obtain direct review of the trial court's interlocutory orders by voluntarily dismissing the entire action with the goal of having the entire action reinstated on appeal. As succinctly stated by the Court of Appeal, "[d]ismissing the entire action with prejudice did not transform the nonappealable interim orders into an appealable judgment." (*Maniago*, *supra*, 109 Cal.App.5th at p. 629.)

### D. Case Law Permitting Appeals from Voluntary Dismissals

The Maniagos argue that while voluntary dismissals are generally not appealable, some appellate courts have recognized an exception to that rule when the dismissal "was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling." (*Stewart*, *supra*, 87 Cal.App.4th at p. 1012.) The line of authority recognizing this purported "exception" appears to have originated with *Ashland*, *supra*,

129 Cal.App.3d 790. In that case, the trial court sustained a demurrer to the entirety of the plaintiff's complaint without leave to amend. Rather than requesting a final judgment of dismissal from the trial court, the plaintiff filed a voluntary dismissal with prejudice and then appealed from that filing. The defendant sought to dismiss the appeal, arguing that the plaintiff's voluntary dismissal was not a final judgment, but rather had operated to extinguish the matter entirely.

The *Ashland* court disagreed with the defendant and permitted the appeal to proceed. Citing to an American Law Reports annotation, the court explained that decisions from "many courts" (presumably referring to courts from other jurisdictions) had permitted "appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the theory the dismissals were not really voluntary, but only done to expedite an appeal." (*Ashland, supra*, 129 Cal.App.3d at p. 793.) Applying similar reasoning, the court explained that the plaintiff had "dismissed its complaint after the [trial] court sustained [the defendant's] demurrer without leave to amend," and had done "so only to obtain a final judgment so it could contest the court's ruling. Under these circumstances, [the plaintiff's] request for dismissal was tantamount to a request to enter judgment . . . ." (*Ibid.*)

Unlike the situation in this case, the voluntary dismissal in *Ashland* was preceded by the entry of an adverse order that, while technically not a final judgment, nonetheless constituted a final ruling on the merits of the entire action. (See *Meinhardt, supra*, 16 Cal.5th at p. 653 [order sustaining demurrer without leave to amend is "not statutorily appealable" and appeal technically should be taken from subsequent judgment].) Given

the procedural posture of *Ashland*, we think the case is best
viewed as akin to decisions that have permitted appeals from
"orders that reflect the trial court's final decision but are not
statutorily appealable, such as orders granting summary
judgment [citation] and orders sustaining demurrers without
leave to amend." (*Meinhardt*, at p. 655.) Those decisions are
predicated primarily on "judicial economy" (*id.* at p. 654),
reasoning that when the trial court has issued an order that
disposes of the entire action and "the judgment itself was little
more than a formality," requiring plaintiffs to "go back to [the]
superior court, obtain a judgment, and appeal again . . . would
result only in a complete waste of time" (*Francis v. Dun &
Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 539). (See *Saben,
Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030
["some courts have chosen to treat an appeal from an order . . .
as an appeal from a subsequently entered judgment . . . or even
to deem the order itself to be a judgment, in order to save the
faulty appeal"].)

Much like the appellants in those cases should technically
have requested a final judgment prior to filing their appeal, so
too the appellants in *Ashland* should technically have requested
a final judgment from the court rather than filing a voluntary
dismissal with the clerk. (See §§ 581, subds. (e), (f), 581d.) In
both situations, however, the final judgment rule is not
undermined because the trial court had issued a ruling that,

while not statutorily appealable, nonetheless disposed of the entire action.[9]

For purposes of this case, we need not decide whether a reviewing court may, in the interests of preserving time and judicial resources, permit an appeal from a voluntary dismissal that is entered after the issuance of an adverse order that constitutes a final decision as to all claims pleaded in the complaint. That was clearly not the situation here. At the time the Maniagos entered their dismissal, the trial court had not issued a final ruling as to *any* of their claims and thus there would have been no basis for the court to issue a final judgment (or even a judicial dismissal of any individual claim pleaded within the complaint). In other words, the problem with the Maniagos' approach is not that they requested the wrong form of dismissal (as was the situation in *Ashland*), but rather that they voluntarily dismissed their action before the court had reached a final resolution regarding any of their claims.

The Maniagos also cite cases that appear to expand *Ashland*'s exception to situations where a voluntary dismissal

---

[9] While the *Ashland* court did not address the issue, it appears that the plaintiffs in that case were not authorized to voluntarily dismiss their action because the trial court had already sustained a demurrer to all of their claims without leave to amend, which amounted to a dispositive ruling in the matter. (See *ante*, at pp. 6–7; *Wells*, *supra*, 29 Cal.3d at pp. 785–787 [voluntary dismissal not permissible after entry of orders sustaining a demurrer without leave to amend].) Under such circumstances, the correct procedural approach would have been for the plaintiffs to request a judicial dismissal from the trial court, which would then serve as an appealable judgment, not file a voluntary dismissal. (See §§ 581, subds. (e), (f), 581d.)

was entered after an adverse ruling that merely limited the action in some significant manner. In *Austin, supra*, 211 Cal.App.4th 546, for example, the petitioner sought an administrative writ of mandate (see § 1094.5) directing the Department of Motor Vehicles (DMV) to set aside a decision to suspend his license. During the litigation, the petitioner filed a motion to compel arguing that the DMV was required to provide a free copy of the transcript of the administrative hearing that had resulted in the suspension. The trial court concluded the DMV had no such duty and denied the motion. "Claiming that not having a hearing transcript hamstrung his ability to establish" "his claims" "and in order to expedite his appeal" (*id.* at pp. 549, 550), the plaintiff voluntarily dismissed the mandamus petition with prejudice and filed a notice of appeal. The appellate court, citing *Ashland*, treated the dismissal as an appealable judgment and ultimately agreed that a transcript should have been provided.

Similarly, in *Flowers, supra*, 238 Cal.App.4th 930, the plaintiffs filed claims alleging that several restaurants had violated two statutes — the Disabled Persons Act (Civ. Code, § 54 et seq.) and the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) (Unruh Act) — by denying them service based on the presence of a service dog. Defendants filed a demurrer to the Unruh Act claim arguing that the alleged conduct did not qualify as a violation of the statute. The demurrer did not challenge the plaintiffs' claim under the Disabled Person Act. The court sustained the demurrer without leave to amend. Plaintiffs then voluntarily dismissed the entire action with prejudice as a means of expediting appeal. The Court of Appeal, citing *Austin*, treated the dismissal as an appealable judgment

and ultimately reversed the entirety of that "judgment" with instructions that the trial court "vacate the sustaining of the demurrer." (*Flowers*, at p. 944.) Although the language of the disposition is somewhat ambiguous, the court appears to have contemplated that on remand, the plaintiffs could continue litigating both their Unruh Act claim (which was the subject of the demurrer ruling) and the Disabled Persons Act claim (which had never been adjudicated in the trial court but was purportedly dismissed by the plaintiffs).

To the extent *Austin v. Valverde, supra*, 211 Cal.App.4th 546 and *Flowers v. Prasad, supra*, 238 Cal.App.4th 930 held that a plaintiff may appeal from a voluntary dismissal that is filed after entry of an interlocutory order that does not foreclose the action, we disapprove of those decisions.[10] In *Austin*, the court merely denied the plaintiff access to a free copy of a transcript of an administrative hearing. While that ruling may have made it more difficult for the plaintiff to prove his claim, it did not legally foreclose the claim. And in *Flowers*, the court granted a demurrer to one claim but left a second claim

---

[10] We also disapprove of language in *Stewart v. Colonial Western Agency, Inc., supra,* 87 Cal.App.4th 1006, which the Maniagos cite throughout their briefing, stating that "appellate courts treat a voluntary dismissal with prejudice as an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling." (*Id.* at p. 1012.) The cited passage from *Stewart* appears to have merely been summarizing rulings from *Ashland* and other cases without expressly approving or rejecting those holdings. (See *ibid*.) We nonetheless disapprove *Stewart* to the extent it can be read to endorse a general rule that an appeal may be taken from a voluntary dismissal entered after an adverse ruling of the trial court that does not foreclose the entirety of the action.

unadjudicated.  In both of those cases, the plaintiffs could have properly sought expedited review of the interlocutory orders at issue by filing a petition for writ of mandate.  (See *ante*, at pp. 13–14.)  Alternatively, the plaintiffs in *Flowers* could have requested a judicial dismissal of the Unruh Act claim, which was the subject of the trial court's demurrer order, and then abandoned the unadjudicated Disabled Persons Act claim through a voluntary dismissal.  (See *ante*, at pp. 14–15.)[11]

Finally, plaintiffs argue that declining to treat their voluntary dismissal as a final judgment would violate the principles articulated in *Meinhardt, supra*, 16 Cal.5th 643.  Our decision in *Meinhardt* has little relevance here.  The question in that case was whether the time to appeal in an administrative

---

[11]    The Maniagos cite to several other cases that reference the exception articulated in *Ashland*.  However, none of those cases involved a situation in which the plaintiff attempted to obtain expedited review of interlocutory orders by voluntarily dismissing the entirety of their case before the court had foreclosed any of their claims.  Because these cases present substantially different circumstances than those here, we need not address them.  (See e.g., *Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1266–1267 [permitting appeal where court sustained a demurrer without leave to amend regarding some claims and the plaintiff abandoned the final claim through a voluntary dismissal]; *Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 708 [permitting appeal of order denying attorney fees where the plaintiff filed a voluntary dismissal after the parties entered a settlement that preserved the plaintiff's ability to seek fees ]; *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 974 [allowing appeal of claims that had been foreclosed by the trial court  prior to the entry of the voluntary dismissal, but finding no jurisdiction to review orders pertaining to claims that the trial court had not foreclosed].)

proceeding starts to run "with the filing of an 'order' that disposes of all issues in the case" or with the "subsequent entry of a 'judgment.' " (*Id.* at p. 649.) We concluded that the statutes governing administrative proceedings contemplated that the 60-day time limit began to run from the issuance of the judgment itself. The case did not address the appealability of voluntary dismissals nor did it address a situation in which a party sought to appeal before the trial court had disposed of any of the claims in the lawsuit. Indeed, the trial court in *Meinhardt* had in fact *issued a final judgment*. In this case, in contrast, we are considering the effect of a party's decision to voluntarily dismiss an action *before the court had issued a judgment or order foreclosing any of their claims*. For the reasons explained above, under such circumstances the effect of the dismissal was to terminate the action and forfeit any right to appeal.

## III. DISPOSITION

We affirm the judgment of the Court of Appeal dismissing the appeal for lack of jurisdiction.

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**EVANS, J.**
**CODY, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Maniago v. Desert Cardiology Consultants' Medical Group

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 109 Cal.App.5th 621
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S290188
**Date Filed:**  July 16, 2026

_____

**Court:**  Superior
**County:**  Riverside
**Judge:**  Harold W. Hopp

_____

**Counsel:**

Arai Mitchell, John Arai Mitchell; Law Offices of J. David Black and J. David Black for Plaintiffs and Appellants.

Timothy M. Kowal for Kowal Law Group, APC, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Curtis A. Cole, Matthew S. Levinson, Amy E. Rankin; Kramer deBoer & Keane, Deborah Olsen deBoer and Erik S. Laakkonen for Defendants and Respondents.

Greines, Martin, Stein & Richland and Laurie J. Helper for the California Academy of Appellate Lawyers as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John Arai Mitchell
Arai Mitchell PC
453 South Spring Street, Suite 930
Los Angeles, CA 90013
(213) 622-2324

Matthew S. Levinson
Cole Pedroza LLP
2295 Huntington Drive
San Marino, CA 91108
(626) 431-2787